**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 1:22-cv-01381-RMR-NRN

FRANKLIN D. AZAR & ASSOCIATES, P.C.,
a Colorado Corporation,

and

FRANKLIN D. AZAR,

      Plaintiffs,

v.

EXECUTIVE RISK INDEMNITY, INC.,
a Delaware Corporation,

      Defendant.

---

## ORDER

---

      This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment, ECF No. 37. For the reasons stated below, the motion is DENIED.

## I.     BACKGROUND

      The dispute in this matter centers on whether Colorado's "complete defense" rule, which applies to a duty to defend, also extends to a policy that expressly disclaims any duty to defend but provides for specific duties to advance defense expenses. The parties concede there is no Colorado state court decision directly on point. Plaintiffs' motion for partial summary judgment regarding their claim for declaratory judgment asks this Court to exercise its discretion to decide the issue in their favor. For the reasons set forth below,

the Court declines to exercise its discretion to grant a declaratory judgment in Plaintiffs' favor at this time.

### A.    Factual Background[1]

### 1.    The Policy

Defendant Executive Risk Indemnity, Inc. ("Executive Risk") issued an employment practices liability insurance policy, under which Plaintiffs Franklin D. Azar & Associates, P.C., and Franklin D. Azar, individually, qualified as insureds.  The "Declarations" page of the policy provides in bold, capital letters as follows:

> **THIS IS A CLAIMS MADE POLICY WHICH APPLIES, SUBJECT TO ITS TERMS, ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD," OR, IF PURCHASED, ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED BY "DEFENSE EXPENSES," AND "DEFENSE EXPENSES" WILL BE APPLIED AGAINST THE RETENTION.  <u>THE UNDERWRITER WILL HAVE NO DUTY TO DEFEND ANY "CLAIM."</u>**

ECF No. 37-1 at 7 (bolding and capitalization in original; underlining added).[2]  Section I of the policy states:

> The Underwriter [Executive Risk] will pay on behalf of the **Insureds Defense Expenses** and **Loss** in excess of the applicable retention set forth in ITEM 4 of the Declarations resulting from **Claims** first made against any **Insured** during the **Policy Period** or, if applicable, the Extended Reporting Period, for **Employment Practices Wrongful Acts** occurring subsequent to the Retroactive Date stated in ITEM 5 of the Declarations and before the expiration of the **Policy Period**.

---

[1] The Court relies on the parties' statements of fact in their summary judgment briefing.  *See* ECF No. 37 ¶¶ 1–12; ECF No. 40 at 3–11; ECF No. 41 ¶¶ 1–12; *see also* ECF No. 42.  These facts are undisputed unless otherwise noted.

[2] Throughout this Order, the Court cites to page numbers corresponding with the ECF filing stamp, rather than the page numbers of the underlying documents, unless otherwise noted.

*Id.* at 9 (bolding in original).  ITEM 4 of the Declarations establishes a $75,000 retention for "each and every **Claim**."  *Id.* at 7 (bolding in original).  Section II of the policy defines, in pertinent part, the following terms:

> (B) **"Claim"** means:
>
>     . . .
>
>     (2) any judicial, administrative or other proceeding against any **Insured** for an **Employment Practices Wrongful Act** . . . .
>
> (C) **"Defense Expenses"** means reasonable legal fees and expenses incurred in the investigation, defense or appeal of any **Claim** . . . .
>
> (F) **"Employment Practices Wrongful Act"** means any actual or alleged: (1) **Wrongful Termination**; (2) **Discrimination**; (3) **Harassment**; (4) **Retaliation**; (5) **Third Party Discrimination**; (6) **Third Party Harassment**; or (7) **Workplace Tort**.

*Id.* at 9–10 (bolding in original).  Endorsement No. 17 further modifies the term "**Workplace Tort**" to include "employment-related . . . defamation (including libel and slander)."  *Id.* at 52 (bolding in original).

Section V ("Conditions"), paragraph (D) ("Defense and Settlement of Claims") also states, in pertinent part, that:

> (1) The **Insureds** will have the right and duty to retain qualified counsel of their choosing to represent them in the defense or appeal of **Claims**, but no **Defense Expenses** may be incurred without the Underwriter's consent, such consent not to be unreasonably withheld.  It shall not be unreasonable, if more than one **Insured** is involved in a **Claim**, for the Underwriter to withhold its consent to separate counsel for one or more of such **Insureds** unless there is a material actual or potential conflict of interest among such **Insureds**.

(2) The Underwriter will, upon written request, pay **Defense Expenses** owed under this Policy on a current basis.  As a condition of any payment of **Defense Expenses** before the final disposition of a **Claim**, the Underwriter may require a written undertaking on terms and conditions satisfactory to it guaranteeing the repayment of any **Defense Expenses** paid on behalf of any **Insured** if it is finally determined that this Policy would not cover **Loss** incurred by such **Insured** in connection with such **Claim**.   Except for **Defense Expenses** paid in accordance with this CONDITION (D)(2), the Underwriter will have no obligation to pay any **Loss** before the final disposition of a **Claim**.

(3) No **Insured** may admit any liability for any **Claim** or settle any **Claim** without the Underwriter's consent; provided, however, that the **Insureds** may settle any **Claim** without the Underwriter's consent where **Defense Expenses** and the settlement amount in respect of such **Claim**, in the aggregate, do not exceed fifty percent (50%) of the applicable retention. The Underwriter will have the right to make investigations and conduct negotiations and, with the consent of the **Insureds**, enter into such settlement of any **Claim** as the Underwriter deems appropriate. . . .

*Id.* at 18 (bolding in original).

### 2.    The Underlying Lawsuit

Plaintiff Franklin D. Azar & Associates, P.C. initiated a lawsuit in Denver County District Court, Case No. 2020CV30785, bringing claims for (1) breaches of contracts, (2) breach of the duty of loyalty, and (3) aiding and abetting breach of the duty of loyalty, against its former employee, Ivy Ngo.  ECF No. 37-2 at 4–5.  On October 22, 2020, Ngo brought counterclaims against Franklin D. Azar & Associates, as well as Franklin D. Azar, individually, in the Denver County District Court case.  *See id.*  In particular, Ms. Ngo brought claims for (1) declaratory judgment against the law firm, (2) false advertising under 15 U.S.C. § 1125(a), (3) defamation per se, (4) tortious interference with prospective business advantage, (5) unjust enrichment, and (6) violation of the Colorado Consumer Protection Act.  *Id.* at 13–21.

### 3.    The Coverage Dispute

On November 13, 2020, Plaintiffs provided notice of the counterclaims to Defendant.  ECF No. 37-3.  A little over a month later, on December 18, 2020, Defendant Executive Risk issued a coverage position letter, which disclaimed coverage for the "non-covered prosecution of the Insured's Complaint against Ngo" and five of Ms. Ngo's six counterclaims.  The letter states that "coverage is available solely for Ngo's allegations of defamation."  ECF No. 37-4 at 1; *id.* at 2 ("Because Ngo is alleging the Workplace Tort of defamation . . . the Policy is triggered.").  Plaintiffs responded thirteen months later, on January 26, 2022, disputing Defendant Executive Risk's coverage position and stating, "we request that [Executive Risk] immediately retract its denial and pay for the full defense that it owes."  ECF No. 37-5 at 2.  The parties have stipulated that Defendant Executive Risk did not respond to Plaintiffs' January 26, 2022 letter.  ECF No. 42 at 1.

### B.    Procedural History

On April 29, 2022, Plaintiffs filed a Complaint in Denver County District Court, ECF No. 3, and on June 1, 2022, Defendant removed the action to this Court, ECF No. 1. Plaintiffs bring claims against Defendant for (1) breach of contract, (2) common law bad faith, (3) violation of Colo. Rev. Stat. §§ 10-3-1115 and 1116, and (4) declaratory judgment.  ECF No. 3 ¶¶ 19–41.  On October 18, 2022, Plaintiffs, through counsel, emailed Executive Risk's counsel to "request [that] Executive Risk . . . contemporaneously reimburse for 100% of the fees and costs incurred relating to the defense of the counterclaims."  ECF No. 37-7 at 1.  On December 15, 2022, Plaintiffs filed a Motion for Leave to File Early Motion for Partial Summary Judgment Pursuant to Court's

Standing Order Regarding Rule 56 Motions, ECF No. 29, which the Court granted on January 24, 2023, ECF No. 36.  Accordingly, Plaintiffs filed their present Motion for Partial Summary Judgment on January 31, 2023.  ECF No. 37.  The motion is fully briefed and ripe for review.

## II.   JURISDICTION AND APPLICABLE LAW

This action is before the Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332.  Plaintiffs are citizens of Colorado.  ECF No. 1 ¶¶ 7–10.  Defendant Executive Risk is a Delaware corporation with its principal place of business in Warren, New Jersey. *Id.* ¶ 11.  Therefore, there is complete diversity among the parties.  *See* 28 U.S.C. § 1332(a), (c)(1).  Further, the amount in controversy exceeds $75,000.  *See id.*; *see also* ECF No. 1 ¶¶ 12–14.

Both parties have applied Colorado law to the substantive arguments in the Motion for Summary Judgment, and the Court agrees that Colorado law applies.  A federal district court sitting in diversity must apply the choice of law rules of the state in which it sits.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009). Therefore, the Court applies Colorado choice of law principles to this case.  "Under Colorado choice-of-law rules, an insurance contract is governed by the law of the state with the most significant relationship to the insurance contract."  *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).  The Policy insures an individual and law firm located in Colorado.  ECF No. 1 ¶¶ 8–9; ECF No. 37-1 at 1, 7, 11. The parties have not specified where the contract was entered into, nor have they pointed

the Court to any choice-of-law clause in the Policy, but the parties, themselves, have applied Colorado law.  *See* ECF No. 37 at 4–11; ECF No. 40 at 12–17; ECF No. 41 at 6–14.   The Court likewise finds that Colorado law controls.   *See, e.g.*, *Advantage Homebuilding, LLC v. Maryland Cas. Co.*, 470 F.3d 1003, 1007 (10th Cir. 2006) ("Although the record on appeal does not indicate where the insurance contract at issue was entered into, the parties agree that Kansas law controls (and thus, presumably, the contract was entered into in Kansas)."); *see also, e.g.*, *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009) ("We assess the policy under Colorado law, which the parties agree govern their diversity contract dispute."). Therefore, the Court, sitting in diversity, applies Colorado law to this dispute.

## III.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "A fact is 'material if under the substantive law it is essential to the proper disposition of the claim.'"  *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)); *see also Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").   "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248; *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  "[T]he dispute is 'genuine' if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997); *see also Anderson*, 477 U.S. at 248.  "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

"[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  However, "the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings" at this stage. *Adler*, 144 F.3d at 671.  If the movant carries "the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law," then "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 670–71.

Ultimately, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

## IV.    ANALYSIS

Plaintiffs move for summary judgment in their favor on the declaratory judgment claim that they have brought against Defendant Executive Risk.  In particular, Plaintiffs request that the Court enter a declaratory judgment "hold[ing] that Defendant must pay for a complete defense to all counterclaims in the underlying lawsuit, still owes that duty, and must pay for a complete defense for all of the counterclaims brought against Plaintiffs by Ms. Ngo in an amount to be determined by the trier of fact."  ECF No. 37 at 12; *see also* ECF No. 41 at 14 n.6 ("[T]his motion is limited to the issue of whether [Executive Risk] must pay for the complete defense based on the single counterclaim it admits was covered under the insurance policy.").  Plaintiffs argue that the "complete defense" rule under Colorado law requires an insurer to "pay for a defense as to all claims in the complaint" if "any one claim brought against an insured in a complaint is arguably covered by the insurance policy."  ECF No. 37 at 5–6 (collecting cases).  As Plaintiffs point out, Defendant Executive Risk has conceded that one of Ms. Ngo's counterclaims against Plaintiffs—the defamation claim—is a covered claim under the terms of the policy.  *See* ECF No. 37 at 1–2; ECF No. 37-1 at 18; ECF No. 40 at 5–7, 16 (citing ECF No. 37-4 at 1–3); ECF No. 41 at 2.  Therefore, according to Plaintiffs, a "complete defense" is owed, such that Defendant should have concurrently paid for defense expenses associated with all of the counterclaims brought against Plaintiffs.  ECF No. 37 at 1–2, 4–5.

Executive Risk does not dispute that it is the law in Colorado that, where there is a duty to defend, the complete defense rule applies.  *See* ECF No. 40 at 12–15.  Indeed, the Tenth Circuit, applying Colorado law, has noted that "[i]f the underlying complaint

asserts multiple claims, one of which is arguably covered, the insurer has a duty to defend against **all claims** asserted." *Panico v. State Farm Fire & Cas. Co.*, 410 F. App'x 160, 163 (10th Cir. 2011) (emphasis added) (citing *Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998)); *see also Pacific Spec. Ins. Co. v. Poirier*, 408 F. Supp. 3d 1241, 1246 (D. Colo. 2019) (Brimmer, C.J.) (citing *Horace Mann Ins. Co. v. Peters*, 948 P.2d 80, 85 (Colo. App. 1998)) ("If the underlying complaint includes more than one claim, a duty to defend against all claims asserted arises if any one of the claims arguably is a risk covered by the relevant insurance policy."); *Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 639 (Colo. App. 2007) ("If the complaint alleges even one claim that is arguably covered by the policy, the insurer must defend its insured against all claims presented in the complaint.").

The dispute is whether the complete defense rule applies to a policy such as the one here, which expressly disclaims any duty to defend but provides for specific duties to advance defense expenses. *Compare* ECF No. 37-1 at 7 ("**THE UNDERWRITER WILL HAVE NO DUTY TO DEFEND ANY 'CLAIM.'**"), *with id.* at 9 ("The Underwriter [Executive Risk] will pay on behalf of the **Insureds Defense Expenses** and **Loss** . . . resulting from **Claims** . . . for **Employment Practices Wrongful Acts** . . . ."), *and with id.* at 18 ("The Underwriter will, upon written request, pay **Defense Expenses** owed under this Policy on a current basis.") (bolding in original).  Both parties also concede there is no law directly on point from the Colorado courts.  Thus, this Court must "predict how the Colorado Supreme Court would rule."  *See Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020).  There are two opinions from the federal

court—each taking a different approach.  Plaintiff urges the Court to follow the reasoning of *Aspen Insurance UK, Ltd. v. Fiserv, Inc.*, No. 09-cv-02770-CMA-CBS, 2010 WL 5129529, at *3 (D. Colo. Dec. 9, 2010) (Arguello, J.), in which Judge Arguello indicated that "[t]here are no material differences between a duty to defend and a duty to advance defense costs" and therefore applied the "traditional duty to defend analysis" to a policy that, like the one here, disclaimed the duty to defend but provided for a duty to advance defense costs.  *Aspen*, 2010 WL 5129529, at *3 (citing *Julio & Sons Co. v. Travelers Cas. & Sur. Co. of Am.*, 591 F. Supp. 2d 651, 660 (S.D.N.Y. 2008)).  Further, the *Aspen* decision goes on to specifically note the complete defense rule in describing the "traditional duty to defend analysis," stating: "under Colorado law, if the underlying complaint asserts more than one claim, a duty to defend against **all claims** asserted arises if any one of them is arguably a risk covered by the pertinent policy.  *Aspen*, 2010 WL 5129529, at *3–4 (emphasis added) (quoting *Blackhawk-Central City Sanitation Dist. v. American Guarantee & Liab. Ins.*, 214 F.3d 1183, 1189 (10th Cir. 2000)).

On the other hand, Defendant instead asks the Court to apply the reasoning of *Denver Investment Advisors, LLC v. St. Paul Mercury Insurance Company*, 17-cv-00362-MEH, 2017 WL 3130923, at *9 (D. Colo. July 24, 2017) (Hegarty, Mag. J.), where the policy at issue also placed the duty to defend on the insured, rather than the insurer, but also provided for a duty to advance defense costs.  Magistrate Judge Hegarty concluded that, "in light of the Policies' clear language placing the duty to defend on the insured, rather than on the insurer, the Court finds it would be improper here to engage in a 'duty to defend' analysis pursuant to *Hecla* and its progeny."  *Id.* at *11; *see also Hecla Min.*

*Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089–90 (Colo. 1991) ("Where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim. . . .  An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured.") (internal quotations, alterations, and citations omitted).

In so concluding, Magistrate Judge Hegarty rejected the insured's argument that the complete defense rule applied.  *Denver Investment Advisors*, 2017 WL 3130923, at *11 (rejecting the argument that the insurer "should advance **all defense costs**, whether for covered or uncovered claims, because . . . the claims involved allegations that were 'potentially covered'") (emphasis added).  Magistrate Judge Hegarty also rejected the reasoning in *Aspen*, "respectfully disagree[ing] with its application of the *Hecla* analysis." *Id.* at *9–10.  Magistrate Judge Hegarty pointed out that the policy reasons for applying *Hecla* were diminished in cases involving an insurance policy disclaiming the duty to defend. *Id.* at *10.  He also found that the case law cited in the *Aspen* decision was either from outside of Colorado or was distinguishable.  *Id.*

Indeed, other than *Denver Investment Advisors* and *Aspen*, the parties here have not cited, and the Court has not identified, Colorado authority (including Colorado Supreme Court authority) addressing the specific question of whether Colorado's "complete defense" rule applies to an insurance policy that expressly disclaims any duty

to defend but still provides that the insurer will advance defense costs.  As stated above, in this situation, the Court must "predict how the Colorado Supreme Court would rule." *See Rocky Mountain Prestress*, 960 F.3d at 1259.  However, the parties have asked the Court to wade into an issue of unsettled law while there remain disputes of fact as to an ultimate issue in this case—whether the conditions in Section V.D.(2) of the policy were satisfied such that Plaintiff may claim defense expenses.

The Declaratory Judgment Act provides, in pertinent part, that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, **may** declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).   "Because of the Act's use of the word 'may,' the Supreme Court has held it confers upon courts the power, but not the duty, to hear claims for declaratory judgment."  *Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 990 (10th Cir. 2012) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995)).  The Act "confers discretion on the courts rather than an absolute right upon the litigant."  *Wilton*, 515 U.S. at 287; *see also Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command.   It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.").

In determining whether to exercise their discretion, district courts should consider the following factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mid-Continent Cas.*, 685 F.3d at 990 (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

Here, the Court finds that these factors weigh against exercising its discretion to grant the declaratory judgment requested by Plaintiffs.  In particular, given the remaining factual issues discussed below, entering the requested declaratory judgment at this time would not "settle the controversy," and "there is an alternative remedy which is better or more effective."  *See id.*  At this point, Plaintiffs have not established they are entitled to payment of Defense Expenses on a current basis, as there is a dispute as to whether Plaintiffs have fulfilled the conditions required for such expenses to be paid under the policy.  As stated above, in order to be entitled to payment of Defense Expenses on a "current basis," Plaintiffs must make a "written request," and Executive Risk "may require a written undertaking on terms and conditions satisfactory to it guaranteeing the repayment of any **Defense Expenses** paid on behalf of any **Insured** if it is finally determined that this Policy would not cover **Loss** incurred by such **Insured** in connection with such **Claim**."  ECF No. 37-1 at 18 (bolding in original).  Otherwise, Executive Risk "will have no obligation to pay any **Loss** before the final disposition of a **Claim**."  *Id.*

(bolding in original).  If Plaintiffs did not meet these conditions provided in the Policy for current payment of Defense Costs, then it appears that the legal question of whether a policy like this one—which disclaims the duty to defend but provides for a duty to advance defense costs—gives rise to a duty to provide a "complete defense," as the parties hotly debate, would be moot.

In the parties' briefing on Plaintiffs' Motion for Leave to File Early Motion for Partial Summary Judgment Pursuant to Court's Standing Order Regarding Rule 56 Motions, ECF No. 29, Defendant argued that there would be factual disputes "(1) as to if, or when, Plaintiffs made a 'written request' for payment on a 'current basis,' (2) as to what invoices, and (3) whether a written undertaking was required and satisfied."  ECF No. 31 at 6. Plaintiffs argued in reply that any facts material to the analysis that they are asking the Court to undertake are undisputed.  ECF No. 32 at 3.  According to Plaintiffs, the only material facts are: "(1) Plaintiffs are insureds; (2) claims were asserted against them; and (3) there is coverage for at least one of those claims."  *Id.*  Although the Court granted leave to file the early Motion for Partial Summary Judgment, upon review of the parties' briefing of that motion, it appears that there are, indeed, material factual disputes that would make a ruling on the question of law presented by Plaintiffs premature.

Although Plaintiffs' January 26, 2022 letter appears to contain a "written request" for payment of Defense Expenses, *see* ECF No. 37-5 at 2 ("[W]e request that [Executive Risk] immediately retract its denial and pay for the full defense that it owes."), Defendant contends that that letter did not constitute a written request because it "did not attach any defense cost invoices to [Executive Risk]."  ECF No. 40 at 7 (citing ECF No. 37-5).

According to Defendant, Plaintiffs did not make an appropriate "written request" until October 18, 2022—nearly six months after Plaintiffs filed their lawsuit in the Denver County District Court and more than four months after the case was removed to this court. *See* ECF No. 40 at 7 (citing ECF No. 37-7); ECF No. 1; ECF No. 3.

In addition to the apparent dispute over when Plaintiffs submitted their "written request" for payment of Defense Expenses on a current basis, the Policy also provides that Executive Risk "may require" Plaintiffs to guarantee in writing the repayment of any Defense Expenses paid for defense of a Claim that is not finally determined to be covered under the Policy.  ECF No. 37-1 at 18.  Neither party has shown that Executive Risk required this written guarantee of repayment from Plaintiffs; however, given the parties' dispute over whether Plaintiffs made a "written request" for coverage before or after the start of this litigation, Executive Risk may not have had the opportunity to require any such written guarantee.  In any case, neither party has stated whether Plaintiffs ever provided that written guarantee.

Until a resolution of these factual issues regarding whether Plaintiff fulfilled the conditions in Section V.D.(2) of the Policy, without which Executive Risk "w[ould] have no obligation to pay any **Loss** before the final disposition of a **Claim**," the declaration that Plaintiffs seek—that "Defendant owed a duty to pay for defense expenses for all of the counterclaims in the underlying lawsuit, still owes that duty, and must pay for a complete defense for all of the counterclaims brought against Plaintiffs by Ms. Ngo . . . ," ECF No. 37 at 12—would be premature.  At this time, such a declaration would not "settle the controversy" because factual disputes would remain.  *See Mid-Continent Cas.*, 685 F.3d

at 990. Further, the "alternative remedy which is better or more effective" would be to resolve the identified factual issues before the Court must wade into the apparently unsettled question of Colorado law that the parties debate in the present Motion for Partial Summary Judgment—one that the Court notes is likely more appropriate for certification to the Colorado Supreme Court than for yet a third federal judge to attempt to predict how the Colorado Supreme Court would rule. Therefore, the Court declines to exercise its discretion to grant a declaratory judgment in Plaintiffs' favor at this time.

## V.    CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Partial Summary Judgment, ECF No. 37, is DENIED.

DATED:  June 9, 2023

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge