IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01381-RMR-NRN

FRANKLIN D. AZAR & ASSOCIATES, P.C., a Colorado Corporation; and
FRANKLIN D. AZAR,

Plaintiffs,

v.

EXECUTIVE RISK INDEMNITY, INC., a Delaware Corporation,

Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO STRIKE DISCLOSURE OF LITGATION COUNSEL AS
WITNESSES AND FOR SANCTIONS (Dkt. #102)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on Plaintiffs Franklin D. Azar & Associates and Franklin D. Azar's (collectively, the "Azar Firm") Motion to Strike Defendant's Disclosure of Litigation Counsel as Witnesses and Request for Sanctions. Dkt. #102. Defendant Executive Risk Indemnity, Inc. ("Executive Risk") filed a response on September 11, 2023. Dkt. #106. On September 25, 2023, the Azar Firm filed a reply. Dkt. #109. The Court heard oral argument on the issue on October 5, 2023. *See* Dkt. #116 (Courtroom Minutes). At that hearing, the Court denied the motion to strike the designation of Ms. Amy Samberg as a potential trial witness, and gave Executive Risk until October 6, 2023, to decide whether it would voluntarily withdraw the disclosure of Mr. Marc Levy (who serves as the Azar Firm's litigation counsel). *See* Dkt. #116. At the October 5, 2023 hearing, Executive Risk could not articulate the specific facts that might

elicited from Mr. Levy. There are serious implications when naming opposing trial counsel as a potential witness, including the prospect of potentially moving to disqualify counsel or placing the adversary in the position of having to get new trial counsel to avoid even the possibility that trial counsel could be called as a witness.

After considering the suggestion that it withdraw the disclosure of Mr. Levy, Executive Risk declined to do so. In its October 6, 2023 supplemental submission, Executive Risk stated,

> Executive Risk does not intend to call Ms. Samberg or Mr. Levy as a witness at trial. However, because Executive Risk cannot determine at this time whether Plaintiffs will attempt to substantiate their bad faith claims by arguing that Ms. Samberg attempted to "trick" Mr. Levy (see ECF No. 106, SOF at ¶¶ 10-14), Executive Risk cannot waive at this time the right to call Ms. Samberg or Mr. Levy to testify in a rebuttal capacity regarding that topic.

Dkt. #117 at 1.

Of course, it was not necessary (or even suggested by the Court) that Executive Risk withdraw the disclosure of Ms. Samberg. The Court had ruled at the October 5, 2023 hearing that it would not strike the disclosure of Ms. Samberg. Ms. Samberg is Executive Risk's counsel and she has entered an appearance in this case. Ms. Samberg was the author of two arguably confusing, and unquestionably disputed, letters, one dated November 30, 2022 (Dkt. #106-4) and a second dated December 14, 2022 (Dkt. #106-5). Both letters were addressed to Mr. Marc J. Levy and Matthew W. Hall as counsel for the Azar Firm. The November 30 letter was a settlement offer under Rule 408 of the Federal Rules of Evidence, offering $457,596 to settle a portion of the Azar Firm's claim against Executive Risk. The November proposal of the $457,596 settlement payment was to "fully settle any obligation ERI has under the Policy to reimburse Defense Expenses . . ." Dkt. #106-4 at 3. That November offer was not

2

accepted by the Azar firm. Nevertheless, the December 14 letter, which continued to indicate that it was a "SETTLEMENT COMMUNICATION – PROTECTED UNDER RULE 408," was accompanied by a check for $457,596. It was not immediately apparent whether the check was still part of a settlement offer (so that the cashing of the check might constitute an accord and satisfaction of the Azar Firm's claim), or whether it was merely intended to be payment of policy benefits with no strings attached—an amount that Executive Risk agreed was owed as a benefit such that cashing the check would not constitute a waiver of any part of the Azar Firm's legal claims against Executive Risk. Counsel for Executive Risk (not Ms. Samberg) later clarified that the check was intended to be a payment of policy benefits, the cashing of which would not constitute a waiver of any claims.

In this insurance bad faith case, where the Azar Firm seeks damages against its insurer, Executive Risk, for failing to provide full defense coverage for claims brought against the Azar Firm in a lawsuit with a former employee, these letters have now taken on outsized importance. Executive Risk has disclosed an expert witness who may testify that the tendering of the check to pay policy benefits demonstrated Executive Risk's good faith in handling and adjusting the claim. *See* Dkt. #102-4 at 2, ¶ 53 n.59 (Expert report of David R. Dwares, citing letter of December 14, 2022 and the forwarding of the $457,596 check as supportive of opinion that Executive Risk acted in good faith). And the Azar Firm, for its part, has suggested that the two arguably inconsistent letters and the tendering of the check may have been an attempt to "trick" the Azar Firm into entering unwittingly into a binding, enforceable settlement. *See* Dkt. #47 at 3 (Plaintiff's Motion to Compel).

3

At the October 5, 2023 hearing on this motion to strike, the Court accepted the argument by Executive Risk that if, at trial, Executive Risk were to make the argument that these disputed letters were part of a "trick" of some kind, then it might be appropriate to call the author of the letters, Ms. Samberg, to refute that claim. Thus, the Court denied the motion to strike Ms. Samberg's disclosure as a potential witness.

With respect to Mr. Levy, however, the issue is not so simple. First, there is no argument that Mr. Levy was involved in the drafting or creation of the disputed letters. He was the addressee, on behalf of his client, the Azar Firm. It would be odd for Executive Risk to call the recipient of a letter to establish or refute either the intent of the individual *author* of the letter, or the general intent Executive Risk in authorizing the letter and the accompanying check. At the October 5, 2023 hearing on the motion to strike, other than the vague assertion that Mr. Levy might be called to rebut the argument that the letters were part of some kind of "trick," counsel for Executive Risk could not provide any meaningful statement about what kind of information Mr. Levy might be able to testify to that would be supportive of Executive Risk's defense on this subject. To the extent that Mr. Levy and his client did not fall for any alleged "trick," Mr. Levy's responses to the disputed letters are part of the record in the case. To the extent Mr. Levy's response letters or communications to Executive Risk are relevant at all, such letters or communications presumably would be admissible without the participation of Mr. Levy. Quite simply, it is difficult to fathom how or why Executive Risk would ever call Mr. Levy to provide information "to support its claims or defenses." *See* Rule 26(a)(1)(A)(i). Defense counsel's inability to articulate what discoverable

4

information Mr. Levy might have on these points underscores just how remote is the possibility of calling Mr. Levy as a trial witness.

In addition, as the Azar Firm points out in its motion to strike, the naming or even potential naming of opposing trial counsel as witness has real negative consequences for the lawyer's client. *See* Colo. Rule of Prof. Cond. 3.7(a) (declaring that a lawyer shall not act as an advocate at a trial in which the lawyer Is likely to be a necessary witness, barring certain limited conditions). It puts the opponent in the difficult position of having to decide whether to seek new trial counsel, or instead to proceed with the litigation under the cloud that trial counsel may have to be removed or be disqualified at the last minute if certain arguments are raised at trial. *See Religious Tech. Ctr. v. F.A.C.T.Net, Inc.*, 945 F. Supp. 1470 (D. Colo. 1996) (declining to disqualify defense attorney because Plaintiffs had not met their burden to prove the attorney was a "necessary witness," – meaning the testimony is relevant, material and unobtainable elsewhere). In this instance, Executive Risk has not made any showing or argument that Mr. Levy could possibly be a "necessary witness" at trial.

Even in the context of discovery depositions, efforts to obtain discoverable information from an attorney are viewed with skepticism. Depositions of opposing counsel are generally permitted only when the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. *Boughton v. Cotter Corp.*, 65 F.3d 823, 829 (10th Cir. 1995). Citing the Eight Circuit's decision in *Shelton v. American Motors Corp.*, the *Boughton* court explained that seeking evidence in discovery from an

5

opposing lawyer "disrupts the adversarial system[,] lowers the standards of the profession," and "also adds to the already burdensome time and costs of litigation." *Id.* (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). In addition, efforts to obtain evidence from opposing counsel "detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the clients case without fear of being interrogated by his or her opponent." *Id.* (quoting *Shelton*, 805 F.2d at 1327).

Here, while Executive Risk does not seek to depose Mr. Levy, the Court agrees that even disclosing him as a potential trial witness (without including any meaningful indication as to what he would testify to, or how he could conceivably be a "necessary witness") carries for Mr. Levy, for his client the Azar Firm, and for the litigation as whole, many of the negative consequences described in *Broughton* and *Shelton.*

For these reasons, and because Executive Risk has failed to articulate any information Mr. Levy might have that would cause him to be called as a witness at trial, much less a "necessary" witness, the Court will GRANT IN PART the subject motion (Dkt. #102) and strike Executive Risk's designation of Mr. Levy pursuant to Rule 26(a)(1)(A)(i).

Because the relief requested has only been granted in part (striking the designation of Mr. Levy, but not Ms. Samberg), the Azar Firm's request for an award of fees or other sanctions will be DENIED.

**It is SO ORDERED.**

Dated: October 12, 2023                    BY THE COURT:

_____
N. Reid Neureiter
United States Magistrate Judge