IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01381-RMR-NRN

FRANKLIN D. AZAR & ASSOCIATES, P.C., a Colorado Corporation; and
FRANKLIN D. AZAR,

Plaintiffs,

v.

EXECUTIVE RISK INDEMNITY, INC., a Delaware Corporation,

Defendant.

---

**ORDER AFTER IN CAMERA REVIEW OF CLAIMED ATTORNEY-CLIENT PRIVILEGED AND WORK PRODUCT DOCUMENTS OF DEFENDANT EXECUTIVE RISK INDEMINTY, INC.**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court following its June 28, 2023 order (Dkt. #85) where the Court explained that it was prepared to review claimed attorney-client privileged and work product documents of the Defendant Insurer, Executive Risk Indemnity, Inc. ("Executive Risk").

**Background**

This is an insurance bad faith lawsuit brought by a law firm, Plaintiffs Franklin D. Azar & Associates and Franklin D. Azar's (collectively, the "Azar Firm"), against its insurer, Executive Risk. Executive Risk had issued to the Azar Firm an Employment Practices Liability Insurance Policy for Law Firms, Policy Number 8255-1026 (the "Policy"). The present dispute arises out of a different lawsuit between the Azar Firm and a former employee. The Azar Firm sued the former employee. The former

employee then filed counterclaims against the Azar Firm. The former employee's counterclaims allegedly triggered coverage under the Policy.

Executive Risk initially took the position that it would cover 10–20 percent of the legal costs or expenses of the underlying action, asserting that only some of the underlying legal costs were covered under the Policy. There was little additional communication before the instant bad faith lawsuit was filed. And after the filing of this bad faith lawsuit, communication between Executive Risk and the Azar Firm has been through Executive Risk's litigation counsel.

On November 30, 2022, attorney Amy Samberg, on behalf of Executive Risk, sent a letter to the Azar Firm's litigation counsel entitled "SETTLEMENT COMMUNICATION PROTECTED UNDER CRE 408." Via that letter, Executive Risk offered $457,596 for "the purpose of potential compromise and settlement" and that the offer was conditioned on the Azar Firm fully releasing all claims and dismissing this bad faith case. The letter also included a reservation of rights. If there had only been this single communication—a clear settlement offer, inadmissible under Rule 408 of the Federal Rules of Evidence—then there likely would be no additional controversy. Settlement offers are regularly made between parties' litigation counsel after a lawsuit is filed, and the offers are not normally used as evidence in the litigation.

But, two weeks later, on December 14, 2022, counsel for Executive Risk, Ms. Samberg, sent another letter. That letter actually included a check for $457,597. The second letter too stated that it was a settlement communication covered under Rule 408. The second letter also purported to reserve all of Executive Risk's rights, including reserving Executive Risk's position that only expenses to defend the former employee's

2

defamation counterclaim (roughly ten percent of the total legal expenses incurred by the Azar firm in the underlying case) were compensable under the Policy.

These two communications (and especially, the conveyance of the check) were arguably contradictory and confusing, as it was not clear whether cashing of the tendered check would have resulted in the waiver or release of the Azar Firm's claims in this lawsuit. The Azar Firm, through litigation counsel, sought clarification.

On January 31, 2023, a different lawyer for the Insurer, Alec Boyd, wrote back to the Azar Firm's counsel that "[t]his email constitutes written confirmation that the check sent previously by Chubb [the Insurer] to your firm is firm payment of defense costs reimbursement and that your firm's cashing of the check will not effectuate a 'full and final settlement' of the action." Mr. Boyd later added that the check was not intended to be a settlement, but nevertheless was still "subject to a reservation of rights."

In this federal case, Executive Risk now has issued an expert report citing the issuance and tender of the $457,597 check in support of the expert opinion that Executive Risk acted as a reasonable and prudent insurer under these circumstances. *See* Dkt. #60-5 at 3 (Expert Report Prepared by David R. Dwares, dated March 8, 2023) ("ERI used its best efforts at that time to calculate the percentage of the total litigation costs incurred by Azar that appropriately should be allocated to the defense of all of the causes of action contained in the Counterclaim, explained why and how it completed the calculations and then it sent Azar a check for the full amount of reimbursement that it calculated at that time to be owed to Azar under the Policy.").

Fearful that Executive Risk intends to introduce the tender of the check into evidence at trial in support of its supposed good faith and reasonable conduct in

3

adjusting the claim, the Azar Firm has asserted that it had not had adequate opportunity to understand the motivation for sending the check or to discover the means of calculation of the percentage of total litigation costs to be paid by the insurer.

As a result of the supposed lack of information about the origin and reasoning behind the issuance of the check, the Azar Firm sought production of communications related to the issuance of the check, including attorney-client privileged and work-product information. The Azar Firm argued that under the reasoning articulated in *Menapace v. Alaska National Insurance Co.*, 20-cv-00053-REB-STV, 2020 WL 6119962 (D. Colo. Oct. 15, 2020), the Azar Firm is entitled to discovery about Executive Risk's litigation counsel's purported claims handling activities.

At deposition, the Rule 30(b)(6) witness for Executive Risk purportedly could not answer questions about the check or how the amount was calculated.

On June 28, 2023, on reconsideration of an initial decision not to require the production of disputed privileged documents about the issuance of the check, I issued an order that concluded that litigation counsel was in fact acting as a claims adjuster within the meaning of *Menapace* and that the insurer was running afoul of the sword/shield doctrine by simultaneously seeking to use the tender of $457,597 to demonstrate its good faith in handling this claim, while simultaneously withholding as attorney-client privileged the internal documents that would explain the reasoning and calculation behind the decision to tender the $457,000 while reserving all rights. *See* Dkt. #85 at 9.

However, in that order on reconsideration, I explained that "it is possible that unrelated legal conclusions and strict advice of a legal nature is intermixed with

4

information about the lawyers' involvement in communications about the claim payment tender. Therefore, it will be necessary for the Court to conduct an *in camera* review of documents which may be relevant to these issues." *Id.* at 11.

It was therefore ordered that the Azar Firm identify and designate for Executive Risk the specific documents of interest from Executive Risk's revised privilege log. The date range of the potential documents was to be from November 28, 2022 to February 10, 2023. Executive Risk was then to deliver to the Court unredacted copies of all the designated documents, marking those portions of the documents that Executive Risk thought should nevertheless remain redacted or un-produced altogether because those documents or portions of documents relate to pure legal advice unassociated with the handling of the claim and unrelated to the tender of the check for payment of defense costs. *See id.* at 12–13.

Executive Risk delivered the unredacted versions of the documents via e-mail to the Court for *in camera* review. However, on July 7, 2023, Executive Risk filed an objection with Judge Rodriguez to this Court's June 28, 2023 Order. See Dkt. #87. And, on July 11, 2023, both Parties stipulated to what I interpreted as a stay of my *in camera* review pending a decision by Judge Rodriguez on the objection. *See* Dkt. #88. On July 13, 2023, I agreed to delay any *in camera* review and the disclosure to the Azar Firm of any disputed documents pending a ruling by Judge Rodriguez on the objection. *See* Dkt. #90.

On October 20, 2023, Judge Rodriguez overruled Executive Risk's objection to my order. *See* Dkt. #123. In overruling the objection, Judge Rodriguez said,

> At this stage, the Court certainly cannot conclude that there has been no 'showing of a factual basis adequate to support a good faith belief by a

5

> reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the attorney-client privilege does not protect all of the documents in the file.' *Caldwell v. Dist. Court*, 644 P.2d 26, 32–33 (Colo.1982).

Dkt. #123 at 7.

Therefore the Court has reviewed *in camera* the unredacted documents provided by Executive Risk.

**Results of In Camera Review**

In connection with the submission of unredacted documents, counsel for Executive Risk provided a table which designated by Bates range the redacted documents, along with Executive Risk's own argument/position for why certain material, although contained in documents potentially related to the decision to tender the claim payment check, should nevertheless be deemed protected from production. That table is attached as Exhibit 1 to this Order. With respect to the unredacted materials, for ease of the Court's *in camera* review, Executive Risk highlighted in yellow those portions that Executive Risk felt would be appropriately produced if production was going to be ordered over Executive Risk's objections of attorney-client privilege and work product. Those portions that Executive Risk felt should nevertheless <u>still</u> not be produced were marked in ~~cross out~~ or "strike-through."

Using Executive Risk's document ranges and document descriptions, the Court personally reviewed each of the submitted documents and has come to the following conclusions.

First, a number of the redacted and withheld documents are claimed to be duplicative of other e-mails or documents and, therefore, Executive Risk argues would be "be wasteful of the Court's and Parties' time to require in camera review or allow

6

disclosure of this document." The Court disagrees. The withholding of duplicative documents, especially in the sensitive areas of claimed attorney-client and work product, where certain materials are being redacted and withheld, creates more confusion and suspicion where certain Bates ranges are missing from the production, but are claimed to be exactly duplicative of otherwise produced material. Therefore, with respect to any rulings about a document have may be duplicated elsewhere in the production, the duplicate documents should be treated the same way and produced in the same fashion.

## RULINGS ON DOCUMENT-BY-DOCUMENT BASIS AFTER REVIEW

| DOCUMENT RANGE | DESCRIPTION | COURT RULING |
|---|---|---|
| 001494-001501 | Drafts of the November 30, 2022 settlement letter (draft date 11/28/22) that are identical to the as-sent letter. | This is claimed to be a duplicative fragment of Doc. 001599-001606. The same ruling therefore applies. *See* ruling on Doc. Executive_1599-1606. |
| 001570-001574 | Email string ranging from 11/22/2022 to 12/1/2022. | The Court agrees that those portions in yellow need to be produced.<br><br>The Court disagrees with the majority of the strikeout sections as appropriate for redaction.<br><br>The sentences at the top of Doc. Executive_001571 beginning, "Next, in the event this matter . . ." and ending with "familiar with this case," should be redacted.<br><br>The sentence on page Doc. Executive_001572 which starts "I have also attached . . ." should be redacted.<br><br>Other than these limited redactions, the Court believes that all other portions of these pages should be unredacted and be produced. There are two reasons for this. First, many of the redacted portions of this reflect actual claim handling and adjustment of the claim, which appears to be being farmed out to the attorneys or being done in conjunction with the attorneys. And second, to the extent that Executive Risk is relying on the tender of a policy benefits to show good faith (via the opinion of its expert witness), the reasoning behind the issuance of the check is fair game for discovery, consistent with the sword/shield doctrine. |
| 001575-001578 | Draft of the November 30, 2022 settlement letter (draft date 11/28/22) that are identical to the as-sent letter. | This document should be produced. It will not be deemed a waiver beyond production of this document. |
| 001579-001583 | Email string ranging from 11/22/2022 to 12/1/2022. | This is claimed to be a duplicative fragment of Doc. 001599-001606. The same ruling therefore applies. *See* ruling on Doc. Executive_1599-1606. |
| 001584-001587 | Draft of the November 30, 2022 settlement letter (draft date 11/28/22) that are identical to the as-sent letter. | This document should be produced. It will not be deemed a waiver beyond production of this document. |
| 001588-001594 | Email string ranging from July 27, 2022 to August 15, 2022 with an archiving email from K. Milbauer to Nducorrespondence on December 1, 2022. | I agree with Executive Risk that this document is outside the scope of the timeframe for documents to be reviewed *in camera* and need not be produced at all. |

7

| | | |
|---|---|---|
| 001595-001598 | Email string ranging from November 22, 2022 to December 1, 2022. | This is claimed to be a duplicative fragment of Doc. 001599-001606. The same ruling therefore applies. *See* ruling on Doc. Executive_1599-1606. |
| 001599-001606 | Email string ranging from November 22, 2022 to December 1, 2022. | The Court agrees that portions in yellow should be produced. The Court agrees that portions that are crossed out on pages Executive_1599-1600 are properly redacted. <br><br> The Court disagrees that crossed out portions on pages Executive_1603–1605 should be redacted. Instead, those portions should be unredacted and produced. <br><br> The basis for production is two-fold: First, many of the redacted portions of this reflect actual claim handling and adjustment of the claim, which appears to be being farmed out to the attorneys or being done in conjunction with the attorneys. And second, to the extent that Executive Risk is relying on the tender of a policy payment to show good faith (via the opinion of its expert witness), the reasoning behind the issuance of the check is fair game for discovery, consistent with the sword/shield doctrine. |
| 001672-001679 | Email string ranging from November 22, 2022 to December 1, 2022. | This is claimed to be a duplicative fragment of Doc. 001599-001606. The same ruling therefore applies. *See* ruling on Doc. Executive_1599-1606. |
| 001680-001686 | Email string ranging from July 27, 2022 to December 1, 2022. | I agree with Executive Risk that this document is outside the scope of the timeframe for documents to be reviewed in camera and need not be produced at all. |
| 001701-001708 | Email string ranging from July 27, 2022 to December 1, 2022. | I agree with Executive Risk that this document is outside the scope of the timeframe for documents to be reviewed in camera and need not be produced at all. |
| 001726-001730 | Email string ranging from December 2, 2022 to December 5, 2022. | I agree that the portions in yellow should be produced. <br><br> In addition, with the exception of the stricken redacted portions on Executive_1729-1730 (which may remain redacted and not produced), the rest of this entire e-mail string should be unredacted and produced. <br><br> This entire e-mail string shows the origin of the $457,596 tender of policy benefits, how it was inextricably linked to the settlement offer (which Executive Risk anticipated would be rejected) and was all part of a "strategy." Redacting significant portions of this e-mail string deprives the reader of the ability to understand the full context of the origin of the $457,596 tender. To the extent the tender amount was intended to be a payment of policy benefits, the lawyer(s) who came up with this strategy was (or were) acting in the claim adjustment role. And, in addition, because the tender has been referred to by Executive Risk's expert witness as evidence of Executive Risk's good faith conduct, the disclosure of this e-mail explaining the origin of the tender is consistent with the sword/shield doctrine. |
| 001764-001770 | Email string ranging from December 2, 2022 to December 5, 2022. | With respect to pages Executive_001764-001768, the Court agrees with the redactions. But, on page Executive_001769, the Court finds that the first three stricken bullet points (starting with "The urgency of the decision . . ." and ending with "post-counterclaim defense costs was $371,478") need to be unredacted and produced. These bullet points should be produced because they are part of the explanation for the tender of policy benefits and under the sword/shield doctrine should be produced. The remainder of this page is properly redacted. |
| 001771-001775 | November 30, 2022 letter. | No privilege asserted. This should be produced. |
| 001818-001824 | Email string ranging from November 22, 2022 to December 1, 2022. | This is duplicative of Doc. 001599-001606. The same ruling therefore applies. *See* ruling on Doc. Executive_1599-1606. |
| 001825-001828 | Email string ranging from December 2, 2022 to December 5, 2022. | This is claimed to be a duplicative of Doc. 001726-001730. The same ruling therefore applies. *See* ruling on Doc. Executive_1726-1730. |
| 001836-001841 | Email string ranging from December 2, 2022 to December 6, 2022. | I agree that the first two pages Executive_001836-37 are outside the scope and protected by attorney-client privilege and attorney work product. These are properly redacted and need not be produced. <br><br> The remainder is claimed to be a duplicative of Doc. 001726-001730. The same ruling therefore applies. *See* ruling on Doc. Executive_1726-1730. |
| 001908-001910 | December 14, 2022 letter. | No privilege asserted. This document should be produced. |
| 001940-001949 | Email string ranging from December 2, 2022 to January 4, 2022. | I agree that the portions in yellow should be unredacted and produced. <br><br> In addition, starting at the very bottom of Executive_001941 with the bullet point "Azar's December 21, 2022 response to the payment ERI made on December 14th" and continuing onto page Executive_001942 to the phrase, "accurate than the 50% fallback assumption," |

8

| | | |
|---|---|---|
| | | this entire section needs to be unredacted and produced. This section shows Executive Risk's thinking in response to the Azar Firm's response to the policy benefits tender and is relevant to Executive Risk's supposed good faith in connection with that tender. Both because the lawyer appears to be acting as a claims adjuster and because of the sword/shield doctrine, this material should be produced.<br><br>Similarly, the redacted sections from Executive_001945-001946 is duplicative of an email string that was previously addressed, but it too should be unredacted and produced. |
| 001954-001963 | Email string ranging from December 2, 2022 to January 4, 2022. | This is claimed to be a duplicative of Doc. Executive 001940-001949. The same ruling therefore applies. |
| 001964-001966 | December 14, 2022 letter | No privilege is asserted. This document should be produced. |
| 001980-001989 | Email string ranging from December 2, 2022 to January 5, 2022. | This is claimed to be a duplicative of Doc. Executive 001940-001949. The same ruling therefore applies. |
| 001998-002008 | Email string ranging from December 2, 2022 to January 5, 2022. | This is claimed to be substantially duplicative of Doc. Executive 001940-001949. The same ruling therefore applies. The Court agrees that the non-duplicative portion deals only with reference to changes to an opposition brief and is properly redacted. |
| 002009-002019 | Email string ranging from December 2, 2022 to January 5, 2022. | This is claimed to be substantially duplicative of Doc. Executive 001940-001949. The same ruling therefore applies. The Court agrees that the non-duplicative portion deals only with reference to changes to an opposition brief and is properly redacted. |
| 002032-002039 | Email string ranging from January 11, 2023 to February 2, 2023. | The Court agrees that the portions in yellow should be unredacted and produced. The remainder is properly designated as attorney-client privileged. |

For the foregoing reasons, within five business days from the date of this ORDER, Defendant Executive Risk shall unredact and produce those portions of the withheld documents consistent with this Order.

**It is SO ORDERED.**

Dated: November 7, 2023

BY THE COURT:

_____

N. Reid Neureiter
United States Magistrate Judge